

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **HOPE ACADEMY CORP.,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD77709** |
| | ) | |
| v. | ) | **OPINION FILED: June 9, 2015** |
| | ) | |
| **THE MISSOURI STATE BOARD OF EDUCATION,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Patricia S. Joyce, Judge

Before Division Three: Mark D. Pfeiffer, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

The question in this appeal is whether the Missouri State Board of Education ("Board") or the Department of Elementary and Secondary Education ("DESE") (collectively "the Respondents") has the authority to review a public university's decision not to renew sponsorship of a charter school. Because the statute at issue does not grant the Board or DESE the authority to review these decisions, Appellant Hope Academy Corporation ("Hope Academy") failed to state a claim upon which relief could be

granted. We therefore affirm the trial court's dismissal of the charter school's declaratory judgment action.

## Factual and Procedural History[1]

Hope Academy was a public charter school operating in Kansas City and was organized pursuant to the Missouri Charter Schools Act.[2] §§ 160.400 to 160.425.[3] As a charter school, Hope Academy was required by statute to have a sponsor charged with oversight of the school, such as a public school district or a four-year university. § 160.400. The University of Missouri-Kansas City ("UMKC")[4] entered into charter contract with Hope Academy in which it agreed to be a sponsor for a five-year period beginning in 2009 and ending in 2014.

At some point in 2013, Hope Academy submitted an application to UMKC to renew its charter. On December 2, 2013, UMKC informed Hope Academy that upon completing a review of the "application for renewal, the UMKC Charter School Center has made the decision to not continue as your sponsor." The letter stated that the decision was "heavily influenced by the low Missouri Assessment Plan (MAP) scores Hope

---

[1]When reviewing a motion to dismiss, we treat all of the factual allegations in a petition as true, and liberally grant to plaintiffs all reasonable inferences therefrom. *Hendricks v. Curators of Univ. of Mo*., 308 S.W.3d 740, 747 (Mo. App. W.D. 2010). We review exhibits attached to the petition as part of the allegations. *Id.* (citing Rule 55.12; additional citation omitted).

[2]In *State ex rel. School Dist. of Kansas City v. Williamson*, 141 S.W.3d 418, 421-422 (Mo. App. W.D. 2004), we laid out this overview of the Missouri Charter Schools Act:

> The Charter Schools Act, approved by the General Assembly, in 1998, set up a scheme by which private groups could seek a charter to operate a school in certain urban districts. The applicants were required to seek a sponsor [, such as a local public school district or a public four-year university]. Perceived advantages were that charter schools could operate free of many of the technical requirements imposed on public school districts and take unique or imaginative approaches to curriculum development and implementation. At the same time, the charter school could obtain the per-pupil funding that the local public school district would have received for each student and could seek other funding, including grants.

(Footnote and references to RSMo omitted.)

[3]All statutory references are to RSMo 2000 as currently supplemented unless otherwise indicated.

[4]UMKC is not a party to this action.

2

Academy students have posted for the last four years, therefore identifying Hope Academy as a persistently low achieving school by the Department of Elementary and Secondary Education."

In a letter to UMKC, Hope Academy sought review pursuant to the "Renewal Application Appeals Process" and requested the procedural requirements for that "hearing/appeals process." UMKC scheduled an appeal hearing and provided Hope Academy a copy of UMKC's appeals process. UMKC's written appeals process stated in pertinent part:

**Procedures for Due Process**:

When the UMKC is unwilling to take a charter renewal application/performance contract forward to the State Board of Education based on a "transparent and rigorous process that uses comprehensive data to make merit-based renewal decisions": RSMo 160.400.11(5)

a. The UMKC Charter School Center has placed the charter school on probationary status to allow the implementation of a remedial plan, which may require a change of methodology, a change in leadership, or both, after which, if such plan is unsuccessful, the charter may be revoked (or non-renewed). RSMo 160.405.8(2)

b. The school has failed to meet one or more of the following grounds:
i. failure to meet academic performance standards as set forth in its charter
ii. failure to meet generally accepted standards of fiscal management
iii. failure to provide information necessary to confirm compliance with all provisions of the charter and sections 160.400 to 160.420 and 167.349 within forty-five days following receipt of written notice requesting such information
iv. violation of law. RSMo 160.405.9(1)

c. a summary of the non-renewal recommendation is first presented to the UMKC Charter School Advisory Board and then to the Dean of the UMKC School of Education.

3

d.    If the Dean is in support of not taking the charter school forward for renewal, the procedures and appeal options are:

i.    At least sixty days before acting to non-renewal or revoke a charter, the sponsor shall notify the governing board of the charter school of the proposed action in writing.  The notice shall state the grounds for the proposed action.  RSMo 160.405.8(3)

ii.    The school's governing board may request in writing a hearing before the UMKC Charter School Center within two weeks of receiving the notice.  RSMo 160.405.8(3)

iii.    A hearing, with oral testimony and written argument, before the UMKC Administration, or their designee, will take place within two weeks of the written request from the board.

iv.    Written notice from the UMKC Administration, or designee, of the final renewal decision shall be provided within two weeks of the hearing.  RSMo 160.405.8(4)

e.    ***Final decisions of the UMKC Administration, or designee, may be appealed to the State Board of Education for a final decision.***  RSMo 160.405.8(4)

f.    A termination shall be effective only at the conclusion of the school year, unless the UMKC Charter School Center determines that continued operation of the school presents a clear and immediate threat to the health and safety of the children.  RSMo 160.405.8(5)

(Emphasis added).

An appeals hearing committee of UMKC specifically informed Hope Academy in a letter that the committee "voted unanimously today to uphold the decision to withdraw UMKC's sponsorship of The Hope Academy ***at the conclusion of the current charter term***."  (Emphasis added.)[5]

Apparently seizing on the language of UMKC's appeals procedure stating that "Final decisions of the UMKC Administration, or designee, may be appealed to the State Board of Education for a final decision [under Section 160.405.8(4)]," Hope Academy

---

[5]There is no allegation that any of UMKC's actions were untimely.

sought review from the Board, which initially advised Hope Academy that it could appeal UMKC's decision to the Board directly. Section 160.405.8(4), cited in UMKC's appeals procedure, states:

> The sponsor of a charter school shall establish procedures to conduct administrative hearings upon determination by the sponsor that grounds exist to *revoke* a charter. Final decisions of a sponsor from hearings conducted pursuant to this subsection are subject to an appeal to the state board of education, which shall determine whether the charter shall be *revoked*.

(Emphases added.)

On or about February 10, 2014, the Board held a hearing concerning Hope Academy's appeal of UMKC's decision not to renew the charter. At the hearing, the Board determined that it did not have the statutory authority to act on Hope Academy's appeal of UMKC's decision not to *renew* the charter.[6]

Hope Academy filed a two-count action against the Board and DESE on April 24, 2014. In its first count, Hope Academy sought "declaratory judgment and mandamus," requesting in essence (a) a declaration that the Board had authority to review and reverse UMKC's decision not to renew the charter pursuant to Section 160.405.8(4), and (b) a mandate that the Board issue a renewal of Hope Academy's charter.[7] In its second count,

---

[6] During the hearing, a member of the Board remarked: "I don't see where the State Board has the ability to force a charter sponsor to continue sponsorship in this case. So there can be a vote determining that there is no basis for review and that's about the only thing I think the Board would be in a position to do." Another member of the Board commented: "If the sponsor didn't want to renew, it looks to me like in the statute they don't have to. They could give any reason or no reason. They could say, well the five years are up and we just decided not to renew you." Counsel for the Board agreed: "[T]he statute assumes on renewal that you have a charter sponsor that is wanting to renew and it places a burden on the charity sponsor to establish that the charter is [in] statutory compliance and they are meeting their performance objectives. In this case you don't have a sponsor meeting that standard. Again, I don't know that – I don't see where the basis is for the State Board to act because you don't have a petition by a sponsor to renew this application."

[7] Hope Academy's specific prayer for relief as to its first count is:

5

Hope Academy sought to enjoin the Respondents from taking any affirmative action enforcing and effectuating UMKC's decision and to instruct Respondents to continue to act as if Hope Academy's charter was renewed (including by providing all of Hope Academy's funding).

Respondents moved to dismiss the action in a written motion, arguing that neither the Board nor DESE had authority to grant the relief sought by Hope Academy. The trial court dismissed the action, and Hope Academy timely appeals.

## Standard of Review

"We review a circuit court's dismissal of a petition for failure to state a claim *de novo*. Similarly, in an appeal of a trial court's denial of an extraordinary writ [such as mandamus], we review questions of law, including questions of statutory interpretation, *de novo*." *State ex rel. St. Joseph Sch. Dist. v. Mo. Dept. of Elementary and Secondary Educ.,* 307 S.W.3d 209, 212 (Mo. App. W.D. 2010) (internal citations and quotation marks omitted).

We assume that all of the plaintiff's allegations in the petition are true and liberally grant to the plaintiff all reasonable inferences from the alleged facts. *Nickell v. Shanahan*, 439 S.W.3d 223, 226-27 (Mo. banc 2014) (citation omitted). We review the petition "in an almost academic manner, to determine if the facts alleged meet the

---

WHEREFORE, Plaintiff Hope Academy prays that this Court issue its judgment declaring Defendants' refusal to reverse the decision of the UMKC Charter School Center because of a lack of authority to do so as void and enforceable as a violation of RSMo. § 160.405.8(4), mandating that Defendants [Board] and DESE issue a ***renewal*** of Hope's charter as requested by Hope and granting Plaintiff its costs, including reasonable attorneys' fees, and such other relief deemed proper and just.

(Emphasis added.)

6

elements of a recognized cause of action, or of a cause that might be adopted in that case." *City of Lake Saint Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010) (citation omitted). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. App. W.D. 2012) (citation omitted).

"However, although we treat all of the *factual* allegations in a petition as true, and liberally grant to plaintiffs all reasonable inferences therefrom, '[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted.'" *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 747 (Mo. App. W.D. 2010) (emphasis in original). To withstand a motion to dismiss, a "petition must invoke substantive principles of law entitling plaintiff to relief and ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial." *Deane v. Mo. Employers Mut. Ins. Co.*, 437 S.W.3d 321, 325 (Mo. App. W.D. 2014).

## Analysis

In its sole point on appeal, Hope Academy argues that the trial court erred in dismissing its petition because the facts alleged in the petition meet the elements of a recognized cause of action in that Hope Academy sought to have the trial court "declare the rights of the parties" under the Charter Schools Act, under Section 527.020, and under Rule 87.02(a).[8] Hope Academy's single point relied on includes no argument contesting the trial court's dismissal as it affects its action for mandamus, nor does the point relied

---

[8]All rule references are to Missouri Supreme Court Rules (2015) unless otherwise indicated.

7

on address the second count of the petition, relating to injunctive relief. We therefore confine our analysis to whether the trial court erred in dismissing Hope Academy's declaratory judgment action. Specifically, our question is whether Hope Academy alleged facts so as to meet the elements of a recognized cause of action for declaratory relief as to Hope Academy's assertion that it was entitled to a determination that the Board and DESE had the authority to review UMKC's decision not to renew Hope Academy's charter.[9]

"It is well settled that an administrative agency has only such jurisdiction or authority as may be granted by the legislature." *Roth v. J.J. Brouk & Co. Corp.,* 356 S.W.3d 786, 787 (Mo. App. E.D. 2011) (citation and internal quotation marks omitted). The Board and DESE are administrative agencies created by statute and possess only that authority granted unto them by statute. *McEuen ex rel. McEuen v. Mo. State Bd. of Educ.,* 120 S.W.3d 207, 208 (Mo. banc 2003).

The Charter Schools Act contains procedures related to revocation, and it contains separate procedures related to the renewal of charters. As to revocation, if a sponsor revokes a charter, then under Section 160.405.8(4), a charter school can seek review by the Board. As reproduced above, that provision specifically states that "Final decisions

---

[9]We note in Hope Academy's petition there is some language indicating that it was contesting UMKC's decision "to revoke and not renew" the charter. However, in its appellate brief, Hope Academy refers to UMKC's action only as a decision not to *renew* the charter, and any discussion or allegation that UMKC's action constitutes a revocation is not a part of its statement of facts. Moreover, all citations to the record, which are exhibits of the pleadings, indicate in accordance with Hope Academy's statement of facts that the decision was one of non-renewal, not revocation, such that any allegation that this constituted an act of revocation is conclusory. *See* Rule 55.12 ("An exhibit to a pleading is a part thereof for all purposes."); *Hendricks*, 308 S.W.3d at 747 ("'[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted.'"). Hope Academy makes no assertion in the argument portion of its brief that the trial court erred in dismissing its action because it was entitled to review of the *revoked* charter; rather, Hope Academy's argument is grounded in the declaratory action over the Board's decision not to review UMKC's decision not to *renew* the charter.

8

of a sponsor from hearings conducted pursuant to this subsection are subject to an appeal to the state board of education, which shall determine whether the charter shall be *revoked*." (Emphasis added.) Although this provision is Hope Academy's main authority in support of its position and is the citation in the petition's prayer for relief, it contains no references to a charter school's right to seek review by the Board or DESE of a sponsor's decision not to *renew* a charter. It is inapplicable.[10]

In contrast to when a sponsor decides to revoke a charter, the Charter Schools Act does not include a review provision for when a sponsor elects not to renew a charter. In *State ex rel. School District of Kansas City v. Williamson*, 141 S.W.3d 418, 425 (Mo. App. W.D. 2004), we explored the language of the Act that was in effect at that time, determining that the Act must be "narrowly construed." We concluded that the Act "does not . . . set forth any provisions that dictate what process must be followed regarding renewal of a charter." *Id.* Where there was no end date included in the *Williamson* charter, we held that "the legislature did not intend to commit sponsors and charter schools to a charter for more than a minimum period of five years, absent specific intent of the parties expressed within the charter."[11] *Id.*

After *Williamson* was decided and after UMKC agreed to sponsor Hope Academy, in 2012, the Legislature amended the Act to include factors a sponsor is to consider when

---

[10]We note additionally that Hope Academy makes no argument that UMKC's appeals process, which mentions Section 160.405.8(4), somehow can create a statutory right of review by the Board or DESE.

[11]Nothing in the record currently before the court indicates a specific intent of the parties to commit the parties to a period of more than a five-year term. To the extent that Hope Academy alleges that the discussions that were ongoing between itself and UMKC regarding UMKC placing Hope Academy on probation and the efforts of Hope Academy to rectify the deficiencies raised by UMKC may have created a commitment by UMKC to renew or extend its sponsorship, those allegations would have to be raised in an action against UMKC and are not encompassed in the current action pending solely against DESE.

9

deciding whether to renew a charter. Specifically, the statute now requires the sponsor to conduct a "thorough analysis of a comprehensive body of objective evidence and consider[ations]." § 160.405.9(2). Since 2012, the sponsor is now to consider performance standards, whether the charter school is organizationally and fiscally viable, and whether the charter is in compliance with its legally binding performance contract. §§ 160.405.9(2)(a) – (c). Assuming that the amendments apply to renewal of the pre-existing agreement between UMKC and Hope Academy, however, it is the case now, as it was the case when *Williamson* was decided, that there is no statutory provision indicating that the decision of a sponsor ***not to renew*** a charter is subject to an appeal to the Board. In fact, when a sponsor wants to renew a charter, the statute now unequivocally places a burden on the ***sponsor*** to demonstrate to the Board that the charter school is in compliance with federal and state law, including data reflecting academic performance standards. § 160.405.9(3)(a). Along with that data, the sponsor also shall submit to the Board a revised charter application. § 160.405.9(3)(b). At that point, the Board determines whether compliance has been achieved and will vote on the revised charter application. § 160.405.9(3)(c).

Nowhere, however, does the Act "make renewal automatic or grant either the sponsor or the charter school any right to renewal or an exclusive option regarding renewal." *Williamson*, 141 S.W.3d at 426 (footnote omitted). "The legislature has expressly imposed similar requirements or granted similar rights with regard to other renewal situations [and] therefore, clearly understands that such conditions may be placed upon renewal within a statute." *Id.* "That the legislature has not done so here, yields a

10

clear legislative intent not to impose such criteria upon the sponsor's decision or to grant the charter school any right to renewal of its charter." *Id.* (citation omitted). Although there are factors that a sponsor must consider before advancing a decision to renew a charter to the Board, then, those factors have never been present – nor has review by the Board ever been authorized – when the decision is made declining renewal.

Accordingly, Hope Academy cannot allege facts indicating that the Board or DESE has the authority to reverse UMKC's decision not to renew its charter under Section 160.405.8(4), which relates to appeals of a sponsor's decision to revoke a charter. In so holding, we reject Hope Academy's argument that it stated a claim pursuant to Section 527.020 and sister Rule 87.02(a), which provide that "Any person interested under a . . . written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute [or] contract . . ., may have determined any question of construction or validity arising under the instrument, statute [or] contract . . . and obtain a declaration of rights, status or other legal relations thereunder." Pursuant to the Charter Schools Act, both the Board and DESE are utterly absent from a sponsor's decision not to renew a charter. It is possible that Hope Academy may be able to seek declaratory relief as to UMKC regarding, e.g., the terms of its original agreement, but the Act is clear that neither of the named Respondents can be subject to any such action under these facts. Therefore, Hope Academy has failed to state a claim upon which relief can be granted. The trial court properly dismissed the petition.

This point is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____

Gary D. Witt, Judge

All concur